# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRENDA E. BATTON WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-216-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Brenda E. Batton Wilson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was fifty-six years old at the time of the administrative hearing (Tr. 262). She has a high school equivalent education and has worked as a secretary (Tr. 111, 124). The claimant alleges she has been unable to work since October 15, 2011, due to diabetes, high blood pressure, carotid artery disease, and bladder infections (Tr. 284).

**Procedural History**

On August 27, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 262-63). Her application was denied. ALJ Deirdre O. Dexter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 13, 2016 (Tr. 10-22). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step four of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that she should have the option to sit for five minutes after thirty minutes of standing or walking; could occasionally stoop and climb ramps or stairs; could never kneel, crouch, crawl, or climb ladders, ropes, and scaffolds; and required the ability to take two unscheduled five minute breaks, one in the morning

and one in the afternoon, without regard to interruption of work processes or work flows (Tr. 95). The ALJ concluded that the claimant was not disabled because she could return to her past relevant work as a secretary (Tr. 98).

## Review

The claimant contends that the ALJ erred by failing to: (i) provide a narrative discussion describing how the evidence supports her RFC, and (ii) properly evaluate her subjective statements. The Court agrees, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found the claimant had the severe impairments of disorder of the urinary tract, diabetes mellitus, spine disorder, hypertension, hyperlipidemia, and cystitis, and the non-severe impairment of affective disorder (Tr. 94). The relevant medical evidence reveals that the claimant largely received treatment through the Choctaw Nation Health Care Center, and that her diagnoses included diabetes, hypertension, hyperlipidemia, diabetic neuropathy, frequent urinary tract infections, polyuria, and hip pain (Tr. 385-455. 549-77, 739-843, 854-82).

On December 5, 2011, the claimant established care with Urologic Specialists of Oklahoma and reported recurrent urinary tract infections (Tr. 732-36). Dr. Sunshine Murray assessed the claimant with chronic cystitis, frequency of urination, incontinence (urge), nocturia, and urgency of urination (Tr. 734-35). She ordered a cystoscopy, the results of which showed no abnormality aside from mild bladder trabeculation (Tr. 713-26). The claimant next sought treatment from Dr. Murray in February 2014, and reported that Toviaz improved her urgency and frequency, but that she was not able to obtain a

prescription (Tr. 709-12). Dr. Murray ordered a CT urogram the results of which were negative from a genitourinary standpoint (Tr. 706, 712). After a number of failed medication trials, the claimant received Botox injections to her bladder on June 5, 2015 (Tr. 681-706). At a follow-up appointment on August 5, 2015, the claimant reported that her frequency and nocturia had resolved, and that she had mild urgency only if she "waits too long" (Tr. 677). Dr. Murray noted the claimant was very happy with her response to Botox, and was completely emptying her bladder (Tr. 680). The claimant followed up with Dr. Murray on November 23, 2015, after air was found in her bladder on a CT scan done during a hospitalization for sepsis, colitis, and hematochezia (Tr. 668-71). Dr. Murray noted the claimant continued to have a good response to the Botox injections, and that she felt the air was related to the catheter she received in the hospital (Tr. 671).

Dr. Terry Kilgore performed a physical consultative examination of the claimant on January 26, 2015 (Tr. 593-99). He found the claimant had some reduced range of motion in her back, neck, hands, wrists, fingers, shoulders, hips, knees, and ankles (Tr. 596-99). He stated that the claimant complained of burning in her feet, but had no evidence of severe diabetic neuropathy (Tr. 595). Dr. Kilgore also stated that the claimant had a normal gait, and used no cane, crutch or wheelchair for ambulating (Tr. 595). He assessed the claimant with diabetes mellitus, diabetic peripheral neuritis, hypertension, left carotid endarterectomy, and stress urinary incontinence (Tr. 595).

On February 4, 2015, State Agency physician Dr. Mark Fisher found that the claimant could perform the full range of light work (Tr. 152-54). His findings were affirmed on review (Tr. 165-68).

Physical therapist Michele Shahan completed a Disability Functional Evaluation on March 10, 2016, wherein she found that the claimant could not perform sedentary work (Tr. 845-52). Specifically, she stated that the claimant could occasionally lift/carry ten pounds, climb, crawl, handle, and finger, but could never balance, stoop, crouch, kneel, reach, push or pull (Tr. 850-51). Ms. Shahan further found the claimant could never be exposed to heights, moving machinery, temperature extremes, or vibration (Tr. 852).

At the administrative hearing, the claimant testified that she stopped working in October 2011 because of her frequent need to use the restroom (Tr. 112). She stated at that time she needed to use the restroom twenty times in a ten-hour period, but that her employer did not have a problem with these breaks (Tr. 113, 118). The claimant also testified that she could not sit or stand for more than thirty minutes without pain and was uncertain if she could stand for a total of two hours or sit for a total of six hours out of an eight-hour work day (Tr. 114-16). She explained that she spends most of her day lying down to relieve the pressure on her back and rated her pain without medication at eight on a ten-point scale, and rated it at six with medication (Tr. 116). The claimant stated she has neuropathy pain in her feet that "bothers [her] real bad," her fingers are numb three-quarters of the day, and she experiences a sharp shooting pain down her forearm when she lifts anything weighing more than five pounds (Tr. 117-19).

In her written opinion, the ALJ summarized the claimant's testimony and the medical evidence. The ALJ noted Dr. Kilgore's consultative physical examination, and found that it was normal, but assigned no weight to his opinion and did not mention or discuss any of his specific findings (Tr. 97). The ALJ gave some weight to the state agency

physician's opinions, but found that the claimant was more limited in light of additional evidence provided after their review (Tr. 97). She then adopted some of Ms. Shahan's diagnoses, but gave her opinions only partial weight because they were not consistent with testing, were not generally consistent with other medical evidence in the record, including the claimant's treatment history with her primary care physician, and because she was a non-acceptable medical source (Tr. 97-98). Additionally, the ALJ found that the claimant's allegations of pain and symptoms were not consistent with the medical record, which consistently showed she was not in acute distress and that she had normal physical examinations (Tr. 97).

The claimant first argues that the ALJ erred in failing to properly assess her RFC, particularly by not explaining how two five-minute unscheduled breaks accommodate her urinary incontinence and resulting concentration problems. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because [s]he has not linked h[er] RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). Here, the ALJ briefly summarized the evidence, and stated her RFC in a conclusory manner, wholly failing to explain how the limitations in the RFC specifically accounted for her severe

impairments including spine disorder and disorder of the urinary tract. This was error. A reviewing court may not properly determine how the ALJ reached the RFC determination when the ALJ "merely summarizes" much of the relevant evidence, states that she considered the entire record, "and then announces h[er] decision." *Brant v. Barnhart*, 506 F. Supp. 2d 476, 486 (D. Kan. 2007) [internal quotation marks omitted].

As part of her argument regarding the ALJ's RFC error, the claimant also asserts that the ALJ erred in evaluating her subjective complaints. Deference must be given to an ALJ's evaluation of a claimant's subjective symptoms unless there is an indication that the ALJ misread the medical evidence taken as a whole. *See Casias*, 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A subjective symptom analysis "must contain 'specific reasons' for the weight given to the individual's symptoms; an ALJ may not simply 'recite the factors described in the regulations.'" Soc. Sec. Rul. 16–3p, 2016 WL 1119029 at *9 (effective Mar. 16, 2016). The ALJ's subjective symptom analysis fell below these standards.

First, the ALJ neither cited to nor discussed the factors set forth in Social Security Ruling 16-3p and 20 C.F.R. § 404.1529, and further failed to apply those factors to the evidence.[2] She was not required to perform a "formalistic factor-by-factor recitation of the

---

[2] The factors to consider in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms are: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (5) treatment

-8-

evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient, *See* Soc. Sec. Rul. 16–3p at *9, 2016 WL 1119029 (effective Mar. 16, 2016) , and here the ALJ did not even do that.

Additionally, some of the specific reasons given by the ALJ for finding the claimant's subjective complaints were not consistent with the medical and other evidence in the record are not entirely supported by the record. For example, the ALJ found that the claimant rated her urinary urgency as moderate, but ignored that there *were* occasions where she described her urgency as severe in 2014 (Tr. 500, 505, 699). Additionally, the ALJ found that the claimant had good response to medication, and referenced Dr. Murray's treatment notes from August 12, 2014, and January 8, 2015, in support. While the claimant did appear to have a good response to the Botox injections, this was not until June 2015 (Tr. 681). The treatment notes cited by the ALJ actually reflect that the claimant *did not* have a good response to Oxytrol and Ditropan, and that she had a good response to Toviaz in the past, but could not afford the medication (Tr. 587-88). Further examination of such "perceived" inconsistencies indicates that the ALJ only cited evidence favorable to her foregone conclusions and ignored evidence that did not support her conclusions. *See Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well

---

for pain relief aside from medication; (6) any other measures the claimant uses or has used to relieve pain or other symptoms; (7) any other factors concerning functional limitations. Soc. Sec. Rul. 16-3p, 2016 WL 1119029 at *7 (March 16, 2016).

as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Because the ALJ failed to provide a narrative discussion of how the evidence supports her RFC and failed to properly evaluate the claimant's subjective symptoms, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 27th day of August, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**